**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHAD EDWARD RACHEL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION: 16-00351-KD-MU** |
| | ) | |
| **PNC BANK, NA,** *et al.*, | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on a *sua sponte* review of the Court's jurisdiction (Doc. 40) and the Defendants' responses to the Court's show cause order (Docs. 49-51).

## I.    Background

This litigation stems from Plaintiff's May 26, 2016 Complaint in the Circuit Court of Mobile County, Alabama (*Case No. 02-CV-2016-901097.00*) against Defendant PNC Bank (PNC), Safeguard Properties, Inc. (Safeguard) and Exquisite Property Preservation, Inc. (Exquisite) for negligence/recklessness, trespass, conversion and outrage.   Plaintiff's case is rooted in post-foreclosure actions taken by Defendants allegedly against the wrong property, as the Defendants confused his home address with that of another.

Specifically, Plaintiff alleges that in May 2015, Defendants came onto his property and mowed the grass and changed the locks to his mobile home trailer (the grass had also been mowed by Defendants on a prior occasion).   In response, Plaintiff complained to Defendant Safeguard (reported the trespass), provided the correct address for the foreclosed home (not his) and filed a complaint with the Mobile County Sheriff's Department.   On May 7, 2016, Defendants again mowed his yard.   In response, he complained to Safeguard and again

provided the other home's address.   Some time later that day – while Plaintiff was away --

Defendants broke into his home and removed almost all of its contents (personal property, dog,

lawn equipment, motorcycle, shed lock, other items, etc.).   Plaintiff was devastated.   As relief,

Plaintiff demands "damages exceeding $50,000" (Docs. 1-1, 13) – thus seeking least $50,000 but

potentially less than $75,000 (*i.e.*, unspecified damages).

On July 5, 2016, Defendants PNC (and Safeguard and Exquisite via consent (Doc. 1 at 5

at ¶21 and Doc. 1-2) filed a Notice of Removal (Notice) per 28 U.S.C. § 1446(b)(2)(B) basing

removal on subject matter diversity jurisdiction per 28 U.S.C. § 1332, asserting it is "facially

apparent" from the Complaint that the amount in controversy exceeds the jurisdictional

requirement of $75,000 and there is complete diversity of citizenship.   (Doc. 1).   As support,

Defendants reference Plaintiff's request for compensatory damages from an alleged trespass to

real property and conversion of all personal property contained therein, as well as mental

anguish/emotional distress and punitive damages.   (Doc. 1 at 4-5).   However, the Notice does

not provide insight as to the amount in controversy.   The Notice does not include estimates for

the damages Plaintiff claims (compensatory, mental anguish/emotional distress, punitive), nor

does it provide valuations of the personal property items alleged to have been converted or

destroyed.   The only specific sum before the Court is the $5,000 which Plaintiff alleges is his

life savings that Defendants took from his home.   At most, Defendants merely list categories of

damages to assert the amount in controversy is satisfied.   This is insufficient.   As it is unclear

whether Defendants satisfied their removal burden, the Court ordered Defendants to show cause

as to why this case should not be remanded.   (Doc. 40).

Defendants PNC, Safeguard, Exquisite, and Jayme and Chris Ryczywot (recently added),

filed responses to the Court's order asserting that the amount in controversy is satisfied.   In so doing, Defendants rely heavily on Plaintiff's October 26, 2016 responses to Defendants Safeguard and Exquisite's joint First Interrogatories – post-removal discovery.   (Doc. 51-1 at 2-11).   In same, Plaintiff identifies **$25,745** in destroyed/lost personal property and 14 "priceless or of extreme importance and cannot be replaced[]" items.   (Id. at 8-11).

## II.   Relevant Law

There can be no doubt but that "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001). See also Allen v. Christenberry, 327 F.3d 1290, 1293 (11th Cir. 2003) ("removal statutes should be construed narrowly, with doubts resolved against removal[]"); University of South Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999) (internal citation omitted) ("[b]ecause removal jurisdiction raises significant federalism concerns....all doubts about jurisdiction should be resolved in favor of remand to state court[]"); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted) ("[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute...which is not to be expanded by judicial decree[]"). Additionally, the removing defendant must bear "the burden of demonstrating federal jurisdiction." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 at n. 4 (11th Cir. 1998). See also McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction[]").   In short, "[i]t is...presumed that a cause lies

outside this limited jurisdiction…and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" <u>Kokkonen</u>, 511 U.S. at 377 (internal citations omitted). Thus, as here, where jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332, the removing party bears the burden of establishing complete diversity of citizenship -- that: 1) the plaintiff is diverse from all the defendants, <u>Triggs</u>, 154 F.3d at 1287, and 2) by a preponderance of the evidence, the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement. <u>Tapscott v. MS Dealer Serv. Corp.</u>, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75],000 jurisdictional requirement[]") *abrogated on other grounds by* <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069 (11[th] Cir. 2000). <u>See also</u> <u>Roe v. Michelin North America, Inc.</u>, 613 F.3d 1058, 1061 (11[th] Cir. 2010) (same); <u>Federated Mut. Ins. Co. v. McKinnon Motors, LLC</u>, 329 F.3d 805, 807 (11[th] Cir. 2003) (same); <u>Collinsworth v. Big Dog Treestand, Inc.</u>, 2016 WL 3620775, *1 (S.D. Ala. Jun. 29, 2016) (same).

Moreover, because Defendant PNC removed this case under Section 1446(b)(1) (within 30 days of its receipt of service of the state court complaint), the Eleventh Circuit's decision in <u>Roe</u>, 613 F.3d at 1062 guides the undersigned's analysis (characterizing that case as a "§ 1446(b) first-paragraph case[] in which the plaintiff does not make a specific damages demand[]" -- which is now considered a Section 1446(b)(1) case).[1] In <u>Roe</u>, the Eleventh Circuit stated: "If a defendant alleges that removability is apparent from the face of the complaint, the district court

---

1 Defendant PNC contends that "where removal is based upon the initial complaint and the first paragraph of 28 U.S.C. § 1446 [a Section 1446(a) removal], the removing defendant may also present additional evidence, such as business records or affidavits, to satisfy its jurisdictional burden." (Doc. 51 at 4). However, as that code section was amended, what was formerly considered a "first paragraph" Section 1446 case is now considered a Section 1446(b)(1) case.

must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought." Roe, 613 F.3d at 1061. Indeed, Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010). Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint...establishes the jurisdictional amount." Id. at 770 (quoting Roe v. Michelin North America, Inc., 637 F.Supp.2d 995, 999 (M.D. Ala. 2009)). See also Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). "[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." Roe, 613 F.3d at 1062.

The Eleventh Circuit further stated that the approach announced in Roe "is consistent with those of other circuits[,]" id. at 1062, specifically citing, *inter alia*, two Fifth Circuit cases – – Luckett v. Delta Airlines, Inc., 171 F.3d 295 (5th Cir. 1999) and Gebbia v. Wal–Mart Stores, Inc., 233 F.3d 880 (5th Cir. 2000). Roe, 613 F.3d at 1062-1063. Luckett and Gebbia both demonstrate that "the Fifth Circuit has repeatedly acknowledged the power of district court judges to appraise the worth of plaintiffs' claims based on the nature of the allegations stated in their complaints." Roe, 613 F.3d at 1063. See Luckett, 171 F.3d at 298; Gebbia, 233 F.3d at 833. Cf. Purdiman v. Organon Pharm. USA, Inc., 2008 WL 686996, *2 (N.D. Ga. Mar. 12, 2008) (pre-Roe) (citing both Luckett and Gebbia, and holding that "[a]lthough the Complaint

excludes any reference to the amount of damages Plaintiff has sustained…after full review and consideration, the Court concludes that is it apparent from the factual allegations in the Complaint that the amount in controversy in this action exceeds $75,000[]"). Thus, at least in the context of a Section 1446(b)(2)(B) removal case in which a plaintiff does not make a specific damages demand -- *such as this one* -- a district court may employ "its judicial experience or common sense…." <u>Roe,</u> 613 F.3d at 1063.

## III. <u>Discussion</u>

Defendant PNC contends <u>*either*</u> that: 1) the amount in controversy is "facially apparent" on the Complaint; <u>*or*</u> 2) <u>Pretka</u> post-removal evidence establishes the amount in controversy. Defendants Safeguard and Exquisite contend it is "facially apparent" the amount is met because Plaintiff's Complaint "clearly place[s] in controversy" more than $75,000 as he seeks compensatory damages for trespass, conversion, outrage, wantonness, mental anguish/emotional distress and his claim for punitive damages "is, of course, included in the determination[.]" (Doc. 50). All Defendants highlight Plaintiff's failure to challenge removal (Safeguard and Exquisite assert he has "tacitly agreed" to the amount in controversy) and his refusal to stipulate to seeking less than $75,000 (as impliedly agreeing to the amount).

Defendant PNC asserts that Plaintiff placed at least $50,000 at issue in his Complaint such that it "need only show that an additional $25,000 is more likely than not in controversy in order to meet their burden and satisfy the jurisdictional threshold." (Doc. 51 at 5). As support, Defendant PNC references the **$25,745.00** itemization from Plaintiff's post-removal discovery responses and to that, <u>*adds*</u> the $50,000 allegation from Plaintiff's Complaint to arrive at an amount in excess of the jurisdictional requirement. However, Plaintiff's allegation of

"exceeding $50,000" in his Complaint appears to already include the property set forth in his $25,745.00 itemization and his damages request.   (Doc. 1-1 at 7-10).

A.     **Failure to Stipulate**

Defendants emphasize the fact that Plaintiff has not stipulated to the amount in controversy.   A plaintiff's refusal to stipulate is not determinative of same, has little probative value and does not extinguish the removing Defendants' burden on that point.  See, e.g., Williams, 269 F.3d at 1320 ("[t]here are several reasons why a plaintiff would not so stipulate, and a refusal to stipulate standing alone does not satisfy...[defendant's]...burden of proof on the jurisdictional issue[]").   See also e.g., Collinsworth, 2016 WL 3620775, *5 (same); Wilson v. Chester Bross. Const. Co., 2011 WL 1380052, *14 at n. 11 (S.D. Ala. Apr. 12, 2011) (same); Mareno v. Wal-Mart Stores, Inc., 2006 WL 2716053, *2 (S.D. Ala. Sept. 22, 2006) (same).

B.     **Failure to challenge removal**

Defendants emphasize Plaintiff's failure to challenge removal.   Plaintiff's failure in this regard should by no means be unilaterally equated with a "tacit agreement" to remove his case to federal court (as Defendants assert).   The absence of a challenge by Plaintiff is irrelevant. This Court is under a *continuing* obligation to *sua sponte* inquire into its subject matter jurisdiction.   Federal courts are courts of limited jurisdiction such that this Court is "obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking."   Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir. 2004).   Additionally, there remains "a presumption *against* the exercise of federal jurisdiction, such that all uncertainties…are to be resolved in favor of remand."   Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001) (emphasis added).   See also Allen v. Christenberry, 327 F.3d 1290, 1293 (11th Cir. 2003)

("removal statutes should be construed narrowly, with doubts resolved against removal[]");
American Tobacco Co., 168 F.3d at 411 (same).

## C.     **"Facially Apparent" from the Complaint**

As noted *supra*, Defendants removed this case under Section 1446(b)(1) such that Pretka governs and applies rather than Lowery (which dealt with "second paragraph" § 1446(b) removal). Defendants contend that an amount in controversy in excess of $75,000 is "facially apparent" based on the claims in Plaintiff's Complaint and because he seeks mental anguish and punitive damages.  There are no monetary valuations of Plaintiff's claims in his Complaint apart from $5,000 in life savings, which he *included* in the award that he seeks of "exceeding $50,000."

### 1.     **Negligence/Recklessness, Trespass, Conversion & Outrage**

Plaintiff alleges that Defendants trespassed onto his property with malice by breaking into his home and removing all of his personal property (including his dog) and  converting same by either destroying or keeping his belongings (only later recovering his dog).   As support that the amount in controversy is met, Defendant PNC relies on Smith v. Family Dollar Stores, Inc., 2014 WL 4793445, *6-7 (N.D. Ala. Sept. 25, 2014) referencing "plaintiff's specific allegations of intentional, aggressive, and malicious trespass coupled with the relief requested" in that case; and Roe, 637 F.Supp.2d at 999 noting "it is not speculative to conclude from the egregious conduct alleged" in that case that the amount in controversy exceeds $75,000.   (Doc. 51 at 6).   Citing the Complaint, Defendant PNC emphasizes Plaintiff's "specific factual allegations" that Defendants incorrectly targeted his home despite him notifying them they had the wrong home; Defendants broke into his home and removed almost the entirety of its contents

which could not be recovered; and Plaintiff was "devastated" and no longer wishes to live in his home.  (Id. at 6-7).

Turning to Smith, 2014 WL 4793445, that case involved the construction of a Family Dollar store and trespass, nuisance, negligence/wantonness and combined and concurring negligence/wantonness claims from noises, vibrations and water drainage impacting plaintiffs' properties.  The Court applied its "judicial experience and common sense" to plaintiffs' factual allegations and claims, to conclude the amount in controversy more likely than not exceeded the jurisdictional minimum. Id. at 3. The Court emphasized plaintiffs' exposure to noises and vibrations during three (3) months of construction, continuous water drainage on to plaintiffs' properties, conscious, deliberate and/or reckless disregard for plaintiffs' possessory/ownership rights, and trespass which was wanton and/or willful with malice, insult, contumely and reckless, insulting, oppressive, aggravated and/or done with gross negligence – all of which interfered with plaintiffs' use/enjoyment of their properties, damaged/devalued their properties, adversely affected their quality of life, exposed them to an unhealthy environment and caused them mental anguish, pain and suffering and anxiety.  Id. at 3.  The court concluded that, "it 'will not permit plaintiff[s] to disclaim the seriousness of defendants' alleged misconduct and the extent of monetary relief sought in an attempt to avoid federal jurisdiction[]'….Plaintiffs have alleged the "defendants intentionally, aggressively, maliciously and wantonly trespassed on and flooded their properties for over a year and a half."  Id. at 5.

Smith is distinguishable.  In this case, the alleged actions by Defendants took place over a few days' time, not an extended period.  Defendants are alleged to have trespassed onto Plaintiff's real property and converted his personal property.  There are no claims that

Defendants exposed Plaintiff to an unhealthy environment or engaged in actions which damaged or devalued his home. Plaintiff does not allege that his real property (mobile home or land) was impacted. Thus, the undersigned cannot liken the circumstances of <u>Smith</u> with the singular (albeit troubling) event at Plaintiff's home.

As for Defendants' reliance on <u>Roe</u>, 637 F.Supp.2d 995, such was a wrongful death case involving product liability claims stemming from a Ford Explorer tire blow out. In <u>Roe</u>, plaintiff's suing under Alabama's wrongful death act prohibited the recovery of compensatory damages, allowing only for punitives. <u>Id</u>. at 997. The Court assessed factors *specific to* an Alabama Wrongful Death Act case to value plaintiff's claims for purposes of deciding whether defendant met its burden of proof with regard to the amount in controversy. <u>Id</u>. at 998. <u>See also</u> <u>Roe v. Michelin North America, Inc.</u>, 613 F.3d 1058, 1064-1066 (11th Cir. 2010). Put simply, this is not wrongful death case, thus the factors assessed in <u>Roe</u> are inapplicable.

### 2.    <u>Mental Anguish Damages</u>

Relying on three (3) cases, Defendant PNC asserts that the amount in controversy is "facially apparent" from Plaintiff's Complaint because his claims, if proven, would allow for the recovery of mental anguish damages:

> ….Plaintiff paints Defendants' conduct as egregious and malicious, and each of his claims, if proven, would allow for the recovery of mental anguish damages. *See, e.g., Butler v. Charter Communications, Inc*., 755 F.Supp.2d 1192, 1196 (M.D. Ala. 2010) (noting that courts routinely consider a plaintiff's claims for mental anguish or emotional distress in determining the amount in controversy). Based on the principal that a person's home is said to be his "castle" and the "largest single individual investment the average American family will make," Alabama law allows the recovery of mental anguish damages even in contract cases where the breach impacts habitability. *B&M Homes, Inc. v. Hogan*, 376 So.2d 6[6]7, 671-72 (Ala. 1979) (recognizing exception to the general rule against recovery of mental anguish damages for breach of contract, the court explained that construction, repair and utilities contracts are "so coupled with matters of mental concern or solitude or with the feelings of the part to whom the duty is owed, that a

breach of that duty will necessarily or reasonably result in mental anguish or suffering."). Given the presumption that mental anguish damages can be recovered for breach of contract involving a home, and given that Plaintiff's Complaint alleges that he [was] constructively evicted from his own home and all of the contents in his home (including his life savings and family heirlooms) were converted (and never returned)...a jury would award significant mental anguish damages. *See, e.g., New Plan Realty Trust v. Morgan,* 792 So.2d 351 (Ala. 2000) (affirming $100,000 compensatory damages award (the majority of which was attributable to mental anguish) and $100,000 in punitive damages based plaintiff/tenant's testimony and evidence establishing that she was "devastated" by defendant/landlord's wrongful removal, conversion and destruction of her personal property and family heirlooms)).

(Doc. 51 at 8-9).

At the outset, Defendant PNC asserts that because Plaintiff alleges he was constructively evicted and all of his home's contents were converted, a jury would award significant mental anguish damages. (Doc. 51 at 9). There are no constructive eviction and/or breach of contract/warranty claims in this case.

Concerning Butler, 755 F.Supp.2d at 1196, a homeowner sued for negligence/wantonness and breach of contract after her home and all of its contents were lost in a fire, seeking unspecified damages (including mental anguish, compensatory and punitives). Butler is distinguishable. At the outset, Defendant PNC cites this case as "noting that courts routinely consider a plaintiff's claims for mental anguish or emotional distress in determining the amount in controversy[.]" (Doc. 51 at 8). However, in this case Plaintiff did not "lose his home" in a fire, or at all for that matter. Moreover, the page cited by Defendants discusses the Butler court's consideration of property appraisal records for the lost home – in terms of evidence a court can consider either attached to a removal notice or post-removal, for purposes of determining the amount in controversy. This is because in Butler attached to the removal notice was a county revenue commissioner's property appraisal for plaintiff's home and land. 755

F.Supp.2d at 1195.    In this case, no such documents were attached to the removal notice.

Additionally, Defendant PNC relies upon a breach contract/warranty case related to home construction, Hogan, 376 So.2d at 671-672, stating that the court "explained that construction, repair and utilities contracts are 'so coupled with matters of mental concern or solitude or with the feelings of the part to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering.'"    (Doc. 51 at 8).    However, Hogan merely quotes F.Becker Asphaltum Roofing Co. v. Murphy, 141 So. 630, 631 (Ala. 1932): where "the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, it is just that damages therefor be taken into consideration and awarded."[2]    And in Hogan, the plaintiffs were worried and concerned for their safety as the home was structurally defective, they believed its condition might cause gas/water lines to burst and they were forced to live in the home because they could not afford to move. Hogan is thus not similar factually to the claims asserted in this case.    Notably, the Hogan court's findings were specifically rooted in the fact that it was a home construction case, id. at 672, which this case is not.

Moreover, to the extent Defendant PNC asserts that as in Morgan, a mental anguish award of $100,000 would be reasonable in this case because Plaintiff alleged he was "devastated" (Doc. 51 at 9), Morgan is distinguishable.    In Morgan, the value of plaintiff's lost belongings due to conversion and trespass was detailed as $46,679 based on a list in which she

_____

    2  F. Becker Asphaltum is a case in which plaintiff's residence's roof "leaked to such extent that she was disturbed in her comfort, her household belongings were soaked with water, her house was made damp, she was made sick, as the jury were authorized to find. And the defendants, though repeatedly notified, took no steps to meet their obligation, were not only guilty of a breach of the contract, but were negligent in respect to the performance of the duty which it imposed on them." Id. at 632.

12

"identified each item and specified a current appraised or replacement value for each item."
792 So.2d at 357. Plaintiff provided no such list or itemization *in his Complaint* from which a
sum (other than $5,000) would be "facially apparent." Also in <u>Morgan</u>, a jury awarded plaintiff
more than double as compensatory mental anguish damages *after hearing evidence of same* – i.e.,
the court was not assessing an amount in controversy during a *sua sponte* jurisdictional inquiry.
And as noted in <u>Morgan</u>: "[o]rdinarily, in Alabama, a plaintiff cannot recover damages for
mental anguish when a tort results in injury to property only, except when the tort is committed
under circumstances of insult or contumely....this Court gives 'stricter scrutiny to an award of
mental anguish [damages] where the victim has offered little or no direct evidence concerning
the degree of suffering he or she has experienced[]'"). <u>Id</u>. at 364 (internal citations omitted).
Here, while Plaintiff alleged the trespass was contumely and he was "devastated" by what
occurred, there is no further detail as to the degree of mental anguish and suffering he
experienced whereas in <u>Morgan</u>, there was evidence of medical treatment for same presented to a
jury.[3] Plaintiff has thus offered "little or no direct evidence concerning the degree of suffering"
experienced *for purposes of assessing whether such is "facially apparent" from the Complaint,*
suggesting the Court should give "stricter scrutiny" to the potential for a mental anguish award *at*
*this juncture*. As such, it would be speculative for the undersigned to conclude that Plaintiff's
mental anguish claims surpass the jurisdictional threshold based on the cases cited by
Defendants.

---

3 The undersigned also notes that the facts in <u>Morgan</u> are dramatically different than in this case. In
<u>Morgan</u>, the plaintiff was in a landlord-tenant apartment lease situation. Morgan was raped and injured by another
resident at the apartment complex which prevented her from working for a time and which prompted her to want to
move – something she communicated to management, asking to terminate her lease early and to remove her
belongings from her apartment a little at a time. During this time Morgan also learned that she had a brain tumor,
becoming very ill, and that doctors thought her sister was dying. In the midst of all of this, and before she could
remove her belongings, management did so; she lost almost everything she had ever owned. <u>Id</u>. at 355-358.

Essentially then, this returns Defendants to a "mere listing" of the category of mental anguish damages as the basis for removal. In such circumstances, and as explained in Collinsworth, 2016 WL 3620775 at *3-5:

In Robinson v. Clayton, 2012 WL 6028940, *2 (S.D. Ala. Dec. 3, 2012), this Court specifically determined that "merely listing categories of damage[,]" which is exactly what Defendant purports to do in this case, does not satisfy the removing defendant's burden of establishing that the amount in controversy exceeds the $75,000 threshold. In reaching this conclusion, this Court favorably cited the conclusion in Williams, 269 F.3d at 1318 and 1320 ("allegations that the plaintiff tripped over a curb and suffered permanent physical and mental injuries, that she incurred substantial medical expenses, that she suffered lost wages, that she experienced a diminished earning capacity, and that she would continue to suffer these damages in the future, along with a demand for both compensatory and punitive damages, did not render it facially apparent that the amount in controversy exceeded $75,000[ ]"). The court also noted that "Williams is a governing application" of the principles set forth in Roe and Pretka and that Williams "was not overruled by Pretka or Roe (nor could it have been, given that Pretka and Roe were not en banc opinions)." Robinson, 2012 WL 6028940, *2 at n. 1. Based upon Williams and Robinson, therefore, the Court concludes that the allegations here do not render it facially apparent that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs….

…Plaintiffs' allegations of mental anguish are too vague and speculative for the undersigned to find that their claims surpass the jurisdictional threshold. See, e.g., Mustafa v. Mortgage St. Mortg. Corp., 840 F.Supp.2d 1287, 1291 (M.D. Ala. 2012) (concluding that the Court could not make a non-speculative estimate of the value of the plaintiff's mental anguish claim); Goodin v. Fidelity Nat'l Title Ins. Co., 2012 WL 473913, *3 (M. D. Fla. Feb. 14, 2012) (finding that "[plaintiff's] allegations of 'mental anguish and stress' are impermissibly vague[ ]"). Indeed, Plaintiffs' complaint, like the complaint in Arrington v. State Farm Ins. Co., 2014 WL 2961104 (M.D. Ala. Jul. 1, 2014), "contains no specific allegations from which one could draw any reasonable inference regarding the extent of the...[Plaintiffs'] mental anguish[] [or] emotional distress[,]" and, as in Arrington, "[i]n th[is] court's 'judicial experience,' mental anguish and emotional distress damages in cases such as this vary widely depending on the circumstances, and even very similar circumstances may affect different plaintiffs in different ways." Id. at *6.

Thus, the undersigned declines to "indulge in speculation or fill empty gaps in the plaintiff's factual averments with unfounded assumptions about what the evidence may show." Arrington, 2014 WL 2961104, *6 (citing Roe, 613 F.3d at 1061). See also Pretka, 608 F.3d at 753-754 ("without facts or specific allegations, the amount in controversy could be 'divined [only] by looking at the stars' — only through speculation — and that

14

is impermissible[ ]").

Moreover, the Court also agrees with the following analysis in <u>Gonzalez v. Liberty Mut. Fire Ins. Co.</u>, 2012 WL 5266063 (M.D. Fla. Oct. 23, 2012), wherein the court highlighted the wasted resources when counsel on removal fail to at least allege some facts to assist the court in determining whether jurisdiction exists:

> Some litigants read *Williams* to require a district court to conduct an evidentiary hearing if the defendant states in the notice of removal only that the amount in controversy exceeds $75,000, but *Williams* concerns the circuit court's procedure for a case on appeal with a dubious amount in controversy. *Williams* requires no hearing each time a defendant half-heartedly compiles the removal documents. Instead, *Williams* expressly leaves the decision to the district judge's discretion—"If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." 269 F.3d at 1319 (emphasis added). An unqualified requirement for an evidentiary hearing or a finding of fact shifts the burden from the defendant to allege facts (a necessary, elementary, and inexpensive task for counsel) to the court to find facts (an unnecessary, timely, and costly endeavor for the parties, the attorneys, and the court). But the burden is the defendant's alone.

<u>Id</u>. at *2 (emphasis added).

The United States Supreme Court has recently addressed removal as follows:

> ...a defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." § 1446(a). By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the *Federal Rules of Civil Procedure. See 14C C. Wright, A. Miller, E. Cooper, & J. Steinman, Federal Practice and Procedure* § 3733, pp. 639–641 (4th ed. 2009) ("Section 1446(a) requires only that the grounds for removal be stated in 'a short and plain statement'—terms borrowed from the pleading requirement set forth in Federal Rule of Civil Procedure 8(a).")....When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith....Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court....In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation....

Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 553-554 (2014).

However, as explained in Dudley v. Eli Lilly and Co., 778 F.3d 909, 912 (11th Cir. 2014) (emphasis added), a CAFA case, Dart addressed the jurisdictional requirements for CAFA cases and the interpretation of removal statutes within that specific context when evaluating remand:

> ...the Supreme Court decided *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. ____, 135 S.Ct. 547...which shed additional light on the jurisdictional requirements found in CAFA. Prior to *Dart*, this Court had presumed that in enacting CAFA, Congress had not intended to deviate from "established principles of state and federal common law," *Miedema*, 450 F.3d at 1328–29 (quoting *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 900 (11th Cir. 2003)), which included "construing removal statutes strictly and resolving doubts in favor of remand," *id*. at 1328. In *Dart*, however, the Supreme Court made clear that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." 135 S.Ct. at 554, 2014 WL 7010692, at *6, slip op. at 912-13....Dart also shed light on the necessary contents of a CAFA defendant's notice of removal.

In contrast, doubts concerning removal of non-CAFA cases should still be resolved in favor of remand (i.e., that there remains an antiremoval presumption for non-CAFA cases). See, e.g., Dudley, 778 F.3d at 912; Komstadius v. Unitedhealth Group, Inc., 2016 WL 3253894, *3 (S.D. Ga. Apr. 29, 2016); Graiser v. Visionworks of Am., Inc., 819 F.3d 277, 283 (6th Cir. 2016); Portillo v. National Freight, Inc., 2016 WL 1029854, *8 at n. 9 (D.N.J. Mar. 15, 2016); McNamee v. Knudsen & Sons, Inc., 2016 WL 827942, *3 (E.D. Mo. Mar. 3, 2016); The Bank of N.Y. Mellon v. ACR Energy Partners, LLC, 543 B.R. 158, 163 (D.N.J. 2015); Rodriguez v. Swissport USA, Inc., 2015 WL 4977187, *2 (C.D. Cal. Aug. 20, 2015).

And even in a court in this Circuit in which Dart was applied to a non-CAFA case, after discussing Dart the court found that the removing party still bears the burden of proof and a defendant will fail to satisfy that burden if it relies on nothing more than the bare allegations of a plaintiff's complaint. Crocker v. Lifesouth Commty. Blood Ctrs., Inc., 2016 WL 740296, *3-4 (S.D. Ala. Feb. 23, 2016) ("[g]iven the Eleventh Circuit's directives that (i) the amount in controversy cannot be satisfied by conjecture or speculation and (ii) district courts may use judicial experience and common sense in evaluating whether jurisdictional requirements are satisfied, the Court readily concludes that LifeSouth has not met its burden here. Plaintiff's allegations of mental anguish and emotional distress are too vague, too speculative to support a judicial determination that Crocker's claims surpass the jurisdictional threshold. We [also] have no facts to show the extent or severity of Crocker's emotional distress[ ]").

Finally, given that this is a non-CAFA case, Defendants Safeguard and Exquisite's

reliance on <u>Dart</u> (Doc. 50 at 2), as support for removal, is also misplaced.[4]

### 3.      **Punitive Damages**

Defendant PNC asserts the amount in controversy is "facially apparent" from Plaintiff's

Complaint as he seeks recovery of punitive damages which "must be considered:"

> …*Roe*, 613 F.3d at 1066 (even though plaintiff's complaint was silent as to the value of his claims it was facially apparent and non-speculative that significant punitive damages could be recovered where the complaint contained specific, non-conclusory allegations concerning the defendant's knowledge of the danger associated with its conduct and failure to take preventative measures). Plaintiff's Complaint, like the complaint in *Roe*, contains specific factual allegations detailing the nature of damages suffered (i.e., "devastating" loss of all personal belongs, family heirlooms/photographs, and life savings) as well as the conduct justifying the imposition of punitive damages; namely, advance notice (with photographs) that Defendants were "targeting" the wrong home and Defendants subsequent refusal to return Plaintiff's property and life savings. The Northern District of Alabama's decision in *Smith, supra*, is also instructive in light of the present facts.
>
> ***
>
> Here, as in *Smith*, Defendants were unable (at the time of removal) to provide estimates as to Plaintiff's damages (compensatory, mental anguish or punitive) beyond noting that, on the face of his Complaint, Plaintiff sought more than $50,000 and asserted serious claims supported allegations of egregious conduct that, if proven, would more likely than not result in award far above $75,000. Moreover, Defendants are not required to produce evidence to support the Plaintiff's allegations… as explained by the Court in *Roe*…613 F.3d at 1064. Similarly, while it may be speculative to identify the specific dollar amount at issue in this case, it is not speculative to conclude from the specific conduct alleged that the amount, whatever it is, is much more than $75,000….

(Doc. 51 at 9-11).

At the outset, while punitive damages are included in an amount in controversy

determination, that does not mean that in each and every case where punitives are alleged, a *de*

*facto* amount in controversy has been necessarily satisfied.    Indeed, "there is nothing talismanic

about such a demand that would *per se* satisfy the amount-in-controversy requirement and trigger

---

4  The same holds for the Ryczwot defendants (Doc. 49), who were not parties to this case at the time of removal, and who suggest that <u>Dart</u> applies.

federal subject-matter jurisdiction." Lambeth v. Peterbilt Motors Co., 2012 WL 1712692, *4 (S.D. Ala. May 15, 2012). Additionally, as explained in a case relied upon by Defendant PNC, Butler, 755 F.Supp.2d at 1195 (internal citations omitted): "*Roe*, an Alabama wrongful death case, should not be extended to non-wrongful death cases merely on the basis that punitive damages are sought….this court 'is not free to simply assume,' that Butler is likely to be awarded substantial punitive damages…."

Moreover, Defendants rely on a calculation of punitives based on a doubling of compensatory damages to exceed the jurisdictional threshold. However, *on the face of the complaint*, there are no compensatory damages alleged other than the specific sum of $5,000, a doubling of which would be far below the jurisdictional threshold. Regardless:

> …the undersigned cannot estimate the value of Plaintiff's punitive damages claims without engaging in pure speculation, *see Mustafa*, 840 F.Supp.2d at 1291, an endeavor which *Roe* and *Pretka* eschew, *see, e.g.*, 608 F.3d at 754.

> The undersigned recognizes that, in *Blackwell, supra*, one judge in the Northern District of Alabama determined that where the plaintiff alleged $23,172.28 in compensatory damages, "a punitive award of slightly more than double the compensatory damages claim would occasion an amount in controversy that exceeds the jurisdictional minimum. Such an amount for punitive damages is uncontroversially within the limits of the Due Process Clause." 620 F.Supp.2d at 1291. Accordingly, that court concluded that the punitive damages claims in that case established the jurisdictional requirements with regard to the amount in controversy. *Id*. at 1291-1292.

> However, the undersigned declines to follow the reasoning in *Blackwell* and, instead, follows the reasoning of the Middle District of Alabama in *Mustafa*, where it declined to apply a multiplier to the plaintiff's $19,444.33 in compensatory damages when evaluating the plaintiff's mental anguish and punitive damages claims. *Mustafa*, 840 F.Supp.2d at 1291-1292. In *Mustafa*, the Middle District considered the analysis in *Blackwell*, but determined that it would be inappropriate for the court to evaluate punitive damages claims by applying multipliers to compensatory damages claims. Id. The Middle District stated as follows:

> > This Court finds *Blackwell* unpersuasive, however, for it fails to put the burden of proof on the removing party, ignores established precedent, and undermines the

foundational principle that a federal court should construe its removal jurisdiction[ ] narrowly. First, applying a single digit multiplier sufficiently high to satisfy the amount-in-controversy requirement, without more, assumes away the removing party's burden to prove the propriety of removal by a preponderance of the evidence. Second, it also ignores the Eleventh Circuit's command in *Lowery v. Alabama Power Company* to look at the facts supporting a damages assertion, because "the existence of jurisdiction should not be divined by looking to the stars." 483 F.3d 1184 (11th Cir. 2007). Woodenly applying a single digit multiple of the compensatory damages claimed, without a non-speculative reason to believe the jury would come back with such an award, violates *Lowery's* explicit commands and is not a reasonable extrapolation from the pleadings under *Roe*. Third, assuming a punitive damages award of up to nine times compensatory damages (likely the highest multiplier that comports with due process) ignores the principle that courts should construe the remand statutes narrowly so as to resolve jurisdictional uncertainties in favor of remand. *Burns v. Windsor Ins., Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Furthermore, using a multiplier, without more, would trigger grave federalism concerns: cases with compensatory damages of just $8,333.33 could begin finding their way into federal court, thus usurping the States' jurisdiction over all but the smallest claims.

*Id*. Like the court in *Mustafa*, the undersigned declines to evaluate the plaintiff's punitive damages claim by applying a multiplier to the plaintiff's compensatory damages, particularly since plaintiff makes no specific claim for compensatory damages. Indeed, applying a multiplier in this case would require "double" speculation by this Court. Therefore, the undersigned simply reiterates that the value of plaintiff's punitive damages claims cannot be estimated without engaging in impermissible speculation…

Davidson v. Liberty Mut. Ins. Co., 2016 WL 7428220, *9-10 (S.D. Ala. Dec. 8, 2016 (Report & Recommendation)), *adopted by* 2016 WL 7427215 (S.D. Ala. Dec. 23, 2016).

In sum, "the court cannot say that the claims for punitive damages, without a clear picture of the dollar value of compensatory damages, or more facts describing the defendants' alleged conduct, will make this case worth more than $75,000."  Snellgrove v. Goodyear Tire & Rubber Co., 2014 WL 235367, *4 (N.D. Ala. Jan. 22, 2014).

D.    **Post-Removal Evidence**

As an alternative, Defendants contend that Pretka post-removal evidence[5] establishes the

_____

5  See *supra* note 1.   Additionally, Pretka confined the Eleventh Circuit's "receipt from plaintiff" and "no

amount in controversy through Plaintiff's interrogatory responses. (Doc. 51 at 13). Post-removal developments may be weighed where they shed light on the amount in controversy at the time of removal. Pretka, 608 F.3d at 772-773. See also Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000) ("[w]e align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction[]"). Specifically, while post-removal changes in the amount in controversy are prohibited, "post-removal clarifications of the amount that was in controversy at the moment of removal[]" are not. Jackson v. Select Portfolio Servicing, Inc., 651 F.Supp.2d 1279, 1282 (S.D. Ala. 2009).

### 1. Valued Personal Property Items

In his interrogatory responses, Plaintiff lists the converted personal property items as totaling **$25,745** with the following assigned values: $4,420 "living room", $990 "kitchen", $15,755 "master bedroom"[6,] $1,030 "utility room", $695 "master bedroom", $1,250 "child's room", $730 "third bedroom", $75 "hall bathroom", $570 "outside" and $230 "shed." (Doc. 51 at 12-13; Doc. 51-1 at 8-11). **$25,745** is significantly below the jurisdictional threshold.

### 2. Non-Valued Sentimental/Heirloom/Collectible Personal Property Items

Plaintiff contends that Defendants converted 14 items that are "priceless or of extreme importance and cannot be replaced" (family photographs, inherited jewelry/watches, title documents, personal papers, bank statements, sports memorabilia, collectible magazines, rug, car show trophies, inherited furniture, etc.) and that Defendants took his dog and when she was

---

discovery' rules to Lowery governed cases ("second paragraph" removals, 28 U.S.C. § 1446(b)), now Section 1446(b)(3) removals.

6 Which includes his $5,000 in life savings.

returned had been impregnated. (Doc. 1-1; Doc. 51 at 12-13; Doc. 51-1 at 8-11). Defendant PNC asserts that "Plaintiff's estimated value of certain items [the $25,745]…coupled with a reasonable valuation of those items which Plaintiff labels as 'priceless or of extreme importance….clearly establish[es] that there is at least $30,000 of actual damages in controversy." (Doc. 51 at 13). Apparently, Defendant PNC has *unilaterally* assigned a value of $4,255 to Plaintiff's "priceless or of extreme importance" items ($30,000 minus $25,745).

Apart from Defendant PNC's unilateral valuation, there is no information before the Court as to Plaintiff's value for these priceless," "heirloom," et cetera items. Under the law, as to Plaintiff's dog, animals are considered personal property such that any value would be based on the dog's market value, which has not been alleged. See, e.g., <u>Alabama Great Southern R. Co. v. Sheffield</u>, 104 So. 222, 224 (Ala. 1925) (discussing, in a case against a railroad for the negligent killing of plaintiff's dogs, "evidence touching the kind of dogs, their training, whether registered, or subject to registration, and any matter going to fix the market value of the dogs was competent[]"); <u>Southern Ry. Co. v. Harris</u>, 93 So. 470 (Ala. 1922) (stating, in an action against a railroad company for damages for killing a dog, that "[a] dog is personal property[]"). With regard to Plaintiff's jewelry, sports memorabilia, collectible magazines, rug, car show trophies, inherited furniture and the like – including "priceless" items -- these personal items may have the potential for a dollar value assigned via appraisal, but such has not been alleged by Plaintiff. As for *purely* sentimental items (i.e., items unable to be valued – keepsake photographs, items from Plaintiff's childhood, items from Plaintiff's son's childhood, etc.), there are no allegations as to their value, and an allegation of sentimental value – *standing alone* -- is not susceptible to valuation. See, e.g., <u>De Valladares v. Wells Fargo Bank, N.A.</u>, 2016 WL 3544659, *2 (S.D.

Fla. Jun. 29, 2016) (plaintiff "seeks 'compensatory damages, including special damages for the sentimental value [the] items had [to] the Plaintiff,' without actually providing details as to the nature of the items....or their value....Plaintiff has failed to include any underlying facts to support her claim that her damages exceed the jurisdictional minimum of $75,000....Plaintiff conclusorily mentions the sentimental value of the items....but has provided little in the way of actual factual allegations to convince this Court that it is more likely than not that her damages will exceed the jurisdictional minimum[]"); Platinum Prop. Mgt. Servs, LLC v. West-Pryor, 2013 WL 5361654, *1 (N.D. Ga. Sept. 25, 2013) ("An owner who has lost his home to foreclosure has an emotional and sentimental investment in his home that cannot be calculated. Defendant, however, cannot allege the perceived benefit in her residence exceeds $75,000.00 and thus, is unable to meet the jurisdictional amount required to support the Court's exercise of diversity jurisdiction[])"; Buerger v. Mabry, 73 So. 135, 136 (Ala. 1916) ("[w]here no market value is shown for secondhand household goods, the actual value of such goods to the owner (excluding fanciful or sentimental value), furnishes the rule for the [ ]measurement of damages[]").

3.   **Mental Anguish Damages**

As an alternative to the arguments raised by Defendant PNC concerning whether it is "facially apparent" from the Complaint that mental anguish damages would be awardable (which the Court found unpersuasive *supra*), Defendant PNC summarily asserts – relying on New Plan Realty Trust v. Morgan, 792 So.2d 351 (Ala. 2001) -- that if Plaintiff's economic damages are $30,000 then his request for "mental anguish damages, standing alone, could easily bridge the necessary jurisdictional gap."   (Doc. 51 at 13).   While unclear, apparently Defendant PNC is

asserting that it is reasonable to conclude that Plaintiff could be awarded *at least $45,000* in mental anguish damages, *or perhaps $100,000,* as awarded by the jury in Morgan. However, Defendant PNC does not explain how it arrives at either figure, and there are no breach of contract and/or eviction claims in this case. Additionally, in Morgan, at trial, there was evidence of plaintiff's mental anguish and medical treatment for same, which is not present in this case. Moreover, Plaintiff's itemized damages are **$25,745**, not $30,000 as Defendants suggest. Adding Defendant's suggested $45,000 mental anguish damage award to that sum results in $70,745 – a figure still below the jurisdictional minimum. And to the extent Defendant PNC may instead be asserting that like in Morgan, a mental anguish award of $100,000 is reasonable, it has failed to satisfy its removal burden in this regard by explaining how this case is akin to Morgan, and this Court has already explained how Morgan is distinguishable, *supra*.

### 4.    Punitive Damages

Defendant PNC asserts that Plaintiff's request for punitive damages satisfies the jurisdictional threshold based on three (3) cases: Holley Equip. Co. v. Credit Alliance Corp., 821 F.2d 1531, 1535 (11th Cir. 1987); *Deutsch Bank Nat'l Trust Co. v. Caldwell,* CV-2010-901880, Circuit Court of Mobile County, Alabama (Dec. 18, 2015); and *Kibby v. Reverse Mortg. Solutions, Inc.,* CV-2014-902414, Circuit Court of Mobile County, Alabama (Feb. 1, 2017). (Doc. 51 at 14-15). The Eleventh Circuit case of Holley concerned a contract for sale of a crane, and after review of same, the undersigned cannot ascertain its relevance to this case. According to Defendant PNC, *Deutcsch* and *Kibby* are wrongful foreclosure cases in which punitive damages were awarded by a jury. (Doc. 51 at 14-15). Despite Defendant PNC's

characterization of Plaintiff's claims (Doc. 51 at 14 at note 6), he has not alleged a claim for constructive eviction and there are no breach of contract claims. As such, these cases are simply irrelevant. As for any other contentions by Defendants concerning Plaintiff's punitive damages request as satisfying the jurisdictional threshold, <u>see</u> *supra*. In sum, Defendants have failed to satisfy their removal burden.

**IV.**     <u>**Conclusion**</u>

Accordingly, due to a lack of subject matter jurisdiction, it is **ORDERED** that this case is *sua sponte* **REMANDED** to the Circuit Court of Mobile County, Alabama from whence it came.

**DONE** and **ORDERED** this the **10th** day of **April 2017.**

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**